## APPEAL OF WESTERMANN & PAGANO, INC.

Docket No. 3763.    Submitted July 7, 1925.    Decided November 11, 1925.

*Philip W. Russell, Esq.*, for the taxpayer.
*J. A. Adams, Esq.*, for the Commissioner.

Before JAMES, LITTLETON, and TRUSSELL.

This is an appeal from the determination of a deficiency in income and profits tax for the year 1919 in the amount of $7,606.98. The appeal results from the denial of personal service classification to the taxpayer.

### FINDINGS OF FACT.

The taxpayer is a New York corporation with its principal place of business at 151 Fifth Avenue, New York. Its name, during the year 1919, was L. A. Westermann Co., which name was subsequently changed, pursuant to the statutes of the State of New York, to Westermann & Pagano, Inc.

The taxpayer was incorporated September 1, 1905, with an authorized capital stock of $10,000, divided into 100 shares with a par value of $100 per share. The stock was issued in equal shares to L. A. Westermann and Eva Burnham Westermann, his wife, for a business previously carried on by them in the form of a partnership. With the exception of an interval between January, 1918, and July of the same year, these individuals held 80 or more shares of the stock from the date of incorporation up to and including the taxable year. In January, 1918, they sold the stock to H. T. Westermann, a brother of L. A. Westermann, but the stock was reacquired in July following. At the beginning of the year 1919 the stock was held as follows: L. A. Westermann, 40 shares; Eva Burnham Westermann, 40 shares; T. Roeser, 10 shares; and Floyd L. Stevens, 10 shares. Later in the year Eva Burnham Westermann sold 30 shares of stock to her husband.

The business of the taxpayer was the planning and preparation of illustrations of merchandise, particularly wearing apparel, for

catalogues used by mail-order houses which sell goods by means of such catalogues. During the year 1919, the taxpayer did business amounting to $170,216.74, of which amount approximately $116,000 was with Sears, Roebuck & Co. The remainder of the business was with other catalogue houses.

All of the shareholders were regularly employed in the active conduct of the business. Westermann and his wife were engaged in planning and working out drawings that were to be made of the merchandise to be presented in the catalogues. Some of the drawings were made by Mrs. Westermann. T. Roeser was an artist who looked after the preparation of the drawings. F. L. Stevens was the efficiency man and saw that the work of the copy artist was completed with as little delay as possible. After the sale of most of her stock, Mrs. Westermann did not devote full time to the business.

When a mail-order house desired to have work done by the taxpayer, Westermann would be called in for a conference. At this conference the customer explained the number of pages of the catalogue to be devoted to the particular line of merchandise and the number of pages desired in black and white and the number in colors. In the case of wearing apparel, the number of garments to be illustrated in the allotted space would be specified. After obtaining this information, Westermann returned to his studio and worked out the best method for showing that number of garments in the space given. Preliminary drawings designated by the taxpayer as dummies were then submitted to the customer for approval after which they were reproduced by Westermann, or his wife, in a size equal to that of the drawing when finished. This reproduction, known as the "layout," was prepared for the convenience of the copy astists who were later to fill them in with exact copies of the garments to be illustrated.

At this juncture Westermann, and oftentimes Mrs. Westerman, would be called in to select the particular garment to be illustrated. A large number of garments would be presented from which Westermann would select those which he considered would make a proper showing in a catalogue. In making these selections it was necessary to consider color and style, having in mind that the goods were to be sold from the catalogue some months later when styles might be somewhat different. Mrs. Westermann had unusual ability along such lines. The choice of the actual garments to be used was left entirely within the discretion of Mr. Westermann. After the garments were selected they were turned over with the layouts, previously made, to copy artists who made actual copies and finished the illustrations. Mr. Westermann supervised this work generally,

and Mr. Roeser looked after the details to see that the work was the result of the copy artists' best efforts.

The taxpayer sometimes employed as many as 25 copy artists during the busy season. At other times very few were employed. Six or seven were usually retained, however, throughout the year in order to insure having them on hand when needed. They were paid by the piece and by the hour, the rate depending on the particular work they did. The range was from $2.50 to $5 per hour. The total amount paid as compensation to artists and models during 1919 was $80,593.88. Due to close organization, the copy artists were able to demand and obtain wages out of proportion to the returns to creative artists.

The price paid for the work done by the taxpayer corporation was based on the average price usually paid for drawings. Due, however, to the peculiar ability of Westermann and his wife for this kind of work, the compensation actually received was from 20 to 25 per cent higher than that received by other concerns in the same line of work. In preparing illustrations for mail-order catalogues it is particularly necessary that the illustration should represent as nearly as possible the article itself but at the same time make it appear to advantage. If the article is plain and of moderate price it is essential that the illustration in the catalogue should show it to be such, and the ability of Mr. and Mrs. Westermann in procuring such effects was specially recognized by taxpayer's customers. The bills for work done were made out for so much per drawing. The price for black and white drawings was approximately $75 for two and in the case of colored illustrations $75 for one. Backgrounds, lettering, and other additional items were billed separately.

During the year 1919, the taxpayer occupied 3,000 square feet of space in the Flat Iron Building in New York City. This building was specially adapted to the business of the taxpayer in view of the fact that light entered the premises from all sides. The expenses for the year were as follows:

*Ordinary and Necessary Expenses.*

| | | |
|---|---:|---:|
| Compensation of artists and models | | $80, 593. 88 |
| Negatives and blue prints | $1, 612. 44 | |
| Art supplies | 1, 563. 43 | |
| Office salaries | 6, 525. 77 | |
| General expense—telephone, telegraph, postage, express, office supplies | 2, 911. 93 | |
| Rent | 6, 333. 33 | |
| Traveling expense | 1, 353. 07 | |
| Legal expense | 1, 547. 23 | |
| | | 21, 847. 20 |
| | | 102, 441. 08 |

*Compensation of members of Corporation.*

| | |
|---|---|
| L. A. Westermann | $24,000.00 |
| Eva Burnham Westermann | 4,000.00 |
| T. Roeser | 7,818.40 |
| F. L. Stevens | 5,462.50 |
| | 41,280.90 |

The balance sheets as of the beginning and close of the taxable year were as follows:

*Assets*

| | Dec. 31, 1918. | Dec. 31, 1919. |
|---|---|---|
| Cash | $4,832.32 | $20,805.88 |
| Trade accounts | 8,443.53 | 13,578.92 |
| Other accounts: | | |
|   F. L. Stevens | | 210.00 |
|   L. A. Westermann | 346.00 | |
| Investments—Liberty loan bonds | | 2,809.25 |
| Prepaid expenses | 214.30 | 87.84 |
| | 13,836.15 | 37,491.89 |

*Liabilities.*

| | | |
|---|---|---|
| Notes payable—L. A. Westermann | $2,500.00 | |
| Accounts payable | 227.02 | $232.49 |
| Accrued wages | 892.95 | 1,165.27 |
| Accrued interest | 93.76 | |
| Capital stock | 10,000.00 | 10,000.00 |
| Surplus and undivided profits | 122.42 | 26,094.13 |
| | 13,836.15 | 37,491.89 |

*Analysis of surplus.*

| | |
|---|---|
| Surplus at beginning of year as shown by the books | $122.42 |
| Net profit as shown by the books | 25,971.71 |
| Surplus and undivided profit | 26,094.13 |

The taxpayer corporation did not enter into written contracts with its customers but did its work under verbal agreements.

In January, 1918, L. A. Westermann and Eva Burnham Westermann sold all of their stock to H. T. Westermann and severed their connection with the company altogether. During the month of January the corporation did some work for Sears, Roebuck & Co., but was unable to procure further business. Practically all of the former customers also refused to give further orders for work, explaining as a reason that they desired the services of L. A. Westermann. The business was not profitable and in July the stock was reacquired by L. A. Westermann and his wife. During the time they were not connected with the taxpayer corporation these individuals did business of approximately $50,000 with Sears, Roebuck & Co.

In 1920 the artists of the taxpayer walked out in a body, and under the leadership of Stevens and Roeser undertook to start a competitive business. They sought orders from customers of the taxpayer,

but were unsuccessful in the attempt. The taxpayer corporation employed other artists and its business continued without interruption. At the time of the trouble Sears, Roebuck & Co. sought to employ L. A. Westermann individually, offering him a salary of $25,000 per year.

### DECISION.

The deficiency determined by the Commissioner is disallowed.